**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| Tyler James Cano, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 18 CV 50080 |
| v. ) | |
| ) | Magistrate Judge Lisa A. Jensen |
| Dixon Correctional Center, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

For the following reasons, Defendants have failed to prove by a preponderance of the evidence that Plaintiff did not exhaust all available administrative remedies. By January 28, 2020, the parties are directed to file a proposed case management order using the form available on Judge Jensen's webpage at www.ilnd.uscourts.gov. A future status hearing will be set by minute entry.

**I. BACKGROUND**

Plaintiff Tyler Cano was an inmate at Dixon Correctional Center and brought this civil rights action under 42 U.S.C. § 1983, claiming excessive force stemming from an incident on July 3, 2017. Defendants answered Plaintiff's complaint and asserted as an affirmative defense that Plaintiff failed to comply with the exhaustion requirements of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). On December 6, 2019, the Court held an evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). Both parties consented to the jurisdiction of the U.S. Magistrate Judge for purposes of the *Pavey* hearing, and both parties were represented by counsel.

**II. EVIDENCE AT THE HEARING**

Plaintiff testified that he arrived at Dixon Correctional Center in April of 2017. He did not recall receiving an orientation manual outlining the grievance procedure when he arrived at Dixon Correctional Center. After the alleged incident on July 3, 2017, Plaintiff spoke with another inmate nicknamed Tiki about the incident. Tiki told Plaintiff he should file a lawsuit, but he needed to file a grievance before he could file suit. Plaintiff then asked correctional officers about the grievance process, and they provided him with a grievance form. Plaintiff testified that he filled out a grievance form on July 9, 2017 and placed the grievance in the crack in his cell door so that it would be picked up for institutional mail. He never received a response to this grievance. He followed up on this grievance in August of 2017 with Lt. Kopie. In response, Lt. Kopie gave Plaintiff two grievance forms in Spanish because they did not have any more English forms. Plaintiff testified that he filled out the Spanish forms (in English) and again submitted the

grievance forms but did not receive any response.  Then, in September of 2017, Plaintiff alleged that he followed up with his counselor Tim Gray regarding the grievances.  Mr. Gray told Plaintiff that he would look into it.  At some point unclear in the testimony, Mr. Gray ceased being Plaintiff's counselor.  While at Dixon Correctional Center, Plaintiff testified that he filed between 10 and 20 grievances in total.  On March 1, 2018, Plaintiff filed this lawsuit.

During the pendency of the suit, in response to discovery requests concerning the exhaustion issue, Magistrate Judge Iain Johnston ordered Plaintiff to submit to Defense counsel all grievances that he had in his possession.  Plaintiff testified that, in compliance with Judge Johnston's order, he sent a letter dated December 3, 2018 to Defense counsel along with copies of several grievances dated February 2018 and one grievance dated August 2018.  In his letter, Plaintiff stated that these grievances were "not relevant to case but proof that [he] filed them especially in the month of February all after my grievance was not returned."  Defs.' Ex. C.  Plaintiff conceded that none of the enclosed grievances detailed the events of the July 3, 2017 incident or name any of the Defendants.  After this letter was sent, Plaintiff filed a December 11, 2018 grievance, which explicitly referenced his prior July and August 2017 grievances and requested an explanation for why they were never returned to him.  Pl.'s Ex. A.  On March 22, 2019, he also filed a written offender request asking to speak to counselor Tim Gray regarding obtaining a copy of a "grievance back from July-August 2017 when he worked e-wing." *Id.* Plaintiff was asked if it was his custom to make copies of grievances.  Plaintiff responded, "Yes. I did get a copy.  I kept all of my grievances and I had to get a copy of them to you."  When asked if he had a copy of his alleged July 9, 2017 grievance, Plaintiff answered no.  He finally testified that during the time of the incident, he was suffering from schizophrenic disorder, anxiety, and post-traumatic stress disorder and was in X-house for mental health treatment.

Defendants also called Sherry Benton, the chairman of the Administrative Review Board (ARB).  Ms. Benton testified that the ARB received only one grievance from Plaintiff.  This grievance, dated February 22, 2018, made no mention of the alleged incident of excessive force on July 3, 2017.  Defs.' Ex. A.  Ms. Benton also testified that she reviewed Plaintiff's CHAMP notes before the hearing.  CHAMP notes reflect the staff's interactions with inmates.  Ms. Benton testified that Plaintiff's CHAMP notes indicated that Plaintiff received an orientation manual on May 2, 2017.  She also testified that if a counselor received a grievance from an inmate, it would have been logged as a CHAMP note.

Finally, Defendants called Andrea Toth who served as a grievance officer and was formerly a correctional counselor at Dixon Correctional Center.  Ms. Toth testified that, when an inmate files a grievance at Dixon, it is sent to the grievance office where it is then sent on to the appropriate counselor.  She described this as the first level of the grievance process.  Prior to December 1, 2018, non-emergency grievances were logged only at the second level.  Thus, if a grievance is received in the grievance office and forwarded to a counselor, it would not be logged.  If the inmate receives a response to the grievance from his counselor and forwards that grievance on to the grievance office, then this is the second level of the grievance process.  All grievances at the second level are recorded in the inmate's grievance log.  Ms. Toth separately testified that based on her recollection of Plaintiff's CHAMP notes, she did not see a note indicating that Plaintiff discussed his July 9, 2017 grievance with a counselor.

2

According to Plaintiff's grievance log, prior to December 1, 2018,[1] there were no non-emergency grievances received at the second level. Defs.' Ex. B. On cross examination, Ms. Toth conceded that if Plaintiff's testimony is true—that he filed non-emergency grievances in July and August 2017, but the counselor never responded to them—there would be no entry on his grievance log.

### III. LEGAL STANDARD

**A. The Prison Litigation Reform Act**

The PLRA requires a prisoner to properly exhaust his administrative remedies before filing an action concerning prison conditions. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). Defendants bear the burden of proving a failure to exhaust affirmative defense. *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015). "Courts analyze a prisoner's exhaustion under the preponderance of the evidence standard." *Lloyd v. Dart*, No. 14 C 69, 2016 WL 232422, at *2 (N.D. Ill. Jan. 20, 2016).

The Seventh Circuit has taken a "strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies, and thus is foreclosed by § 1997e(a) from litigating." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). In determining whether a plaintiff properly exhausted his administrative remedies, however, the Seventh Circuit focuses on "whether the plaintiff did all he could to avail himself of the administrative process." *Wilder v. Sutton*, 310 F. App'x 10, 13 (7th Cir. 2009). Thus, where the prisoner fails to exhaust due to missteps by the prison system, a prisoner will be deemed to have exhausted his administrative remedies. *Dole*, 438 F.3d at 810.

**B. Exhaustion Requirements Under Illinois Law**

State law determines the administrative procedures that a state prisoner must exhaust. *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016). Under Illinois law, an inmate must file a written grievance within sixty days after the discovery of the incident giving rise to the grievance. ILL. ADMIN. CODE tit. 20, § 504.810(a). The grievance must be filed with the inmate's counselor.[2] If filed after sixty days, the grievance shall be considered if the inmate can demonstrate that the grievance was not timely filed for "good cause[.]" *Id.* The grievance must include the factual details of the incident "including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." *Id.* at § 504.810(c). If the grievance is not resolved through a counselor, it is considered by a grievance officer who must render a written recommendation to the Chief Administrative Officer (CAO) within two months of receipt, "when reasonably feasible under the circumstances. *Id.* at § 504.830(e). After receiving a response from the CAO, an inmate may appeal to the ARB

---

[1] While Defendants' Exhibit B states "prior to 11/01/18[,]" Ms. Toth testified that the correct time period is prior to December 1, 2018.
[2] The regulation allows for filing directly with the grievance officer in certain situations not applicable here.

within thirty days after the date of the decision. *Id.* § 504.850(a). The Director of the ARB shall "make a final determination of the grievance within six months after receipt of the appealed grievance, where reasonably feasible under the circumstances." *Id.* at § 504.850(e).

The grievance procedure also allows an inmate to file an emergency grievance. To do so, the inmate must forward the grievance directly to the CAO who may determine that there is a "substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. *Id.* at § 504.840.

## IV. DISCUSSION

Defendants contend that Plaintiff failed to exhaust his administrative remedies. They point to Dixon's grievance records which reveal no evidence of a grievance regarding the July 3, 2017 incident as well as evidence from the ARB that no grievance regarding the July 3, 2017 incident was received until December 11, 2018, well after the sixty-day time limit for filing grievances. Plaintiff counters that he filed grievances regarding the July 3, 2017 incident on July 9, 2017 and again in August of 2017, but he received no responses to these grievances.[3] As such, his administrative remedies were unavailable to him and his failure to exhaust should be excused.

Plaintiff is correct—and Defendants do not dispute—that administrative remedies may be unavailable if prison officials fail to respond to properly filed grievances. *See Dole*, 438 F.3d at 809 ("[A] remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance[.]"); *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005) ("[P]rison officials' failure to respond to a prisoner's claim can render administrative remedies unavailable."). In *Dole*, the Seventh Circuit held that a prisoner, who timely wrote a grievance, placed the grievance in an envelope, and placed the envelope in a hole in his cell for a correctional officer to pick up and mail, exhausted his available administrative remedies, even though the grievance was lost and the ARB never received it, where the ARB did not provide instructions on how to proceed if the grievance was lost and the regulations were unclear on how to proceed. *Dole*, 438 F.3d at 811. However, "[s]imply submitting a grievance and not receiving a response is insufficient to establish that the grievance process is unavailable." *Stallings v. Cook Cty.*, No. 11 C 7349, 2013 WL 3669623, at *5 (N.D. Ill. July 12, 2013). In *Stallings*, the district court granted summary judgment in favor of defendants because the plaintiff could have taken additional steps such as submitting another grievance or resubmitting his original grievance, but he failed to do so. *Id.* at *6.

Here, if Plaintiff's testimony is taken as true, then his administrative remedies were unavailable. He testified that he filed a grievance on July 9, 2017. Like *Dole*, Plaintiff filled out his grievance, placed it in an envelope, and placed it in a hole of his cell so that a correctional officer could mail it. He did everything he was supposed to do,[4] but he never received a

---

[3] Plaintiff also argues that he should be excused from the exhaustion requirement because he was not informed of the exhaustion requirements and because he was seriously mentally ill. Because the Court has determined that Plaintiff is excused from the exhaustion requirement because the correctional facility failed to respond to his grievance, the Court does not address these other issues.

[4] Defendants do not argue that this method of transmitting his grievance was inappropriate.

4

response. And unlike *Stallings*, Plaintiff took additional steps. When he followed up with Lt. Kopie, he was provided with additional grievance forms so he could refile his grievance. Because there were only Spanish grievance forms available, Plaintiff refiled his grievance on these Spanish forms. He also followed up with counselor Tim Gray but still received no response to his grievance. Many months later, on December 11, 2018, Plaintiff filed an additional grievance asking for a response to his July and August 2017 grievances. Pl.'s Ex. A. He also filed an offender request form on March 22, 2019 requesting to speak with counselor Tim Gray regarding obtaining a copy of these grievances. *Id.*

The Court finds Plaintiff's testimony credible. The Court makes this finding based on Plaintiff's demeanor, the lack of inconsistencies in his testimony, and the detailed nature of his testimony. *See Pavey v. Conley*, No. 3:03-CV-662 RM, 2010 WL 4683609, at *2 (N.D. Ind. Nov. 12, 2010), *aff'd*, 663 F.3d 899 (7th Cir. 2011) (magistrate judge found plaintiff to be not credible based on inconsistencies in his testimony and his demeanor on the stand); *Davis v. Francis*, No. 07-CV-0693-MJR, 2009 WL 4894593, at *2 (S.D. Ill. Dec. 11, 2009) ("[P]laintiff's demeanor and the detailed way in which he testified were indicative of truthfulness."). Throughout the evidentiary hearing, Plaintiff consistently contended that he filed grievances regarding the July 3, 2017 incident, followed up on those grievances and did not receive a response. Moreover, Plaintiff's testimony was very detailed. For example, Plaintiff recalled speaking with Lt. Kopie about the lack of response to the July 9, 2017 grievance and that Lt. Kopie provided him with Spanish grievance forms because they ran out of English forms. This level of detail lends credibility to Plaintiff's testimony.

Defendants did not offer testimony to directly refute Plaintiff's testimony. For example, Defendants did not call Plaintiff's counselor Tim Gray to testify that he did not receive any grievances regarding the July 3, 2017 incident or to contradict Plaintiff's testimony that he discussed the July and August 2017 grievances with Mr. Gray.[5] *See Talley v. Trost*, No. 14-cv-948-MJR-SCW, 2015 U.S. Dist. LEXIS 124267, at *24 (S.D. Ill. June 19, 2015), *report and recommendation adopted*, 2015 U.S. Dist. LEXIS 124400 (S.D. Ill. Sep. 17, 2015) ("In past cases, the undersigned has heard testimony from the counselor and his or her involvement in the grievance process to show that grievances were not submitted, but no such testimony was presented from the counselor. Thus, there is no indication whether the counselor ever received the grievances and nothing to rebut Plaintiff's testimony that he submitted numerous grievances."). Nor did Defendants call Lt. Kopie to refute Plaintiff's testimony that he followed up with Lt. Kopie regarding the July 9, 2017 grievances. While Plaintiff identified the exact date and method by which he filed his first grievance regarding the July 3, 2017 incident, Defendants did not call any of the correctional officers working that day to refute Plaintiff's testimony. Defendants did offer several pieces of extrinsic evidence in an attempt to undermine Plaintiff's credibility, but none are persuasive.

---

[5] While Defendants' witnesses testified to their recollection that Plaintiff's CHAMP notes did not contain any reference to Plaintiff discussing grievances with counselor Tim Gray, there was no testimony by Mr. Gray that it was his custom or practice to record all conversations regarding grievances in the CHAMP notes. Moreover, Defendants' attempt to introduce the CHAMP notes into evidence was denied because it came on the eve of the *Pavey* hearing and in violation of this Court's previous ruling.

Defendants presented testimony that there were no CHAMP notes referencing any of the grievances Plaintiff allegedly filed concerning the July 3, 2017 incident, but this does not defeat Plaintiff's testimony. Ms. Benton testified that if a counselor *received* a grievance, the counselor would enter a CHAMP note. Ms. Toth later testified that based on her recollection of Plaintiff's CHAMP notes, there were no CHAMP notes that indicated that a counselor ever *received* the July or August 2017 grievances. Defendants' witnesses confirmed that a CHAMP note is entered only when a counselor receives a grievance and not when an inmate fills out and submits a grievance. Plaintiff testified that he filled out a grievance on July 9, 2017 and again in August 2017 and placed the grievances in envelopes and in the crack in his door so that they would be picked up by a correctional officer to be sent via institutional mail, but Plaintiff never received responses. Plaintiff's properly submitted grievances could have been lost in institutional mail, the grievance office could have failed to forward the grievances to the counselor, or perhaps a correctional officer mishandled the grievances. Under any of these scenarios, a CHAMP note would not have been entered, not because Plaintiff did not file a grievance but because it was not received by the counselor. It would be speculative for the Court to conclude that Plaintiff never filed these grievances simply because there were no CHAMP notes indicating that a counselor received these grievances. *See Pyles*, 829 F.3d at 868 ("Where the evidence underlying a fact, including credibility, supports only speculation about the existence or nonexistence of the contested point, it is clear error to conclude that the point has been established."); *see also Span v. Chavez*, No. 15 CV 50063, 2018 WL 6048038, at *3 (N.D. Ill. Oct. 15, 2018), *report and recommendation adopted*, 2018 WL 6046144 (N.D. Ill. Nov. 19, 2018) ("Moreover, [plaintiff's] testimony is not inconsistent with the defendants' evidence that the . . . grievance was never received by his counselor at Dixon because the grievance could have been lost or not delivered for reasons other than plaintiff's failure to submit it.").

Defendants also argue that the lack of any entry in Plaintiff's grievance log supports a finding that the July and August 2017 grievances were not filed. However, Ms. Toth testified that prior to December 1, 2018, non-emergency grievances were logged only at the second level, which is after an inmate receives an unsatisfactory response from the counselor at the first level. Because Plaintiff testified that he never received a response from his counselor, he could not send the grievance on to the second level. As such, an absence of an entry in the grievance log is consistent with Plaintiff's testimony. In fact, Ms. Toth conceded that if Plaintiff's testimony is true—that he filed non-emergency grievances in July and August 2017, but the counselor never responded to them—there would be no entry on his grievance log.[6]

Defendants next contend that Plaintiff's testimony that it was his custom to keep copies of his grievances, coupled with the fact that he did not have copies of the July and August 2017 grievances, establish that he did not in fact file such grievances. Plaintiff's testimony on this issue, however, was less than clear. Moreover, in the letter that Plaintiff sent to Defense counsel with copies of his grievances, he noted that it did not include the grievance for the July 3, 2017 incident because that grievance was not returned to him. Defs.' Ex. C. All of the grievances sent to Defense counsel with this letter were returned from the counselor or the warden. Therefore, it

---

[6] In closing arguments, Defense counsel argued that Plaintiff testified that his July and August 2017 grievances were emergency grievances and therefore, these grievances should have been on Plaintiff's grievance log. However, this is a misstatement of the testimony as no testimony was offered by Plaintiff that his July or August 2017 grievances were "emergency grievances."

may be that Plaintiff's custom was to copy grievances only after they were returned to him from the counselor or the warden, and this would explain why he did not make a copy of the July and August 2017 grievances. Without more, this evidence is too speculative to undermine Plaintiff's testimony that he submitted grievances in July and August of 2017 and did not receive a response.

Defendants presented evidence that after Plaintiff allegedly filed his July and August 2017 grievances, he filed between 10 and 20 grievances on other topics. They contend that he only filed a follow up grievance concerning the July 3, 2017 incident after Judge Johnston instructed him to submit a copy of his grievances in response to Defendants' failure to exhaust affirmative defense. First, this argument overlooks Plaintiff's testimony that he did follow up after he did not receive a response to his July 9, 2017 grievance. He testified that he talked to Lt. Kopie who instructed him to file a new grievance and he was provided with Spanish forms because no English forms were available. He then filled out those forms and submitted them, but he did not receive a response to these grievances either. Shortly thereafter, Plaintiff filed his lawsuit.

Perhaps Defendants are arguing that he should have done more and that his failure to do so somehow undermines his credibility. However, Defendants did not offer any testimony that Plaintiff was instructed that he must continue to file grievances regarding the unanswered July 9, 2017 grievance *ad infinitum*. Nor did Defendants submit a copy of the orientation manual or other written instructions to support any inference that continued grievances were required when a grievance goes unanswered. It would be speculative for the Court to conclude that Plaintiff is not credible simply because he did not continue to follow up at regular intervals when there is no evidence that he was required to do so. *See Dole*, 438 F.3d at 811 (holding that an inmate exhausted his available administrative remedies in part because the regulations were unclear on how to proceed if the grievance was lost and the ARB did not provide any instructions).

Further, this Court does not find that the timing of Plaintiff's December 11, 2018 grievance or his March 22, 2019 offender request undermines Plaintiff's credibility. While Plaintiff submitted his December 11, 2018 grievance only after Judge Johnston ordered him to turn over copies of all his grievances to Defense counsel, Plaintiff may well have believed this was the only mechanism available to him to try to obtain copies of those grievances in order to comply with the order. In any event, Plaintiff's testimony that he filed grievances in July and August 2017 but never received responses from his counselor is consistent with the facts set forth in his December 11, 2018 grievance and his March 22, 2019 offender request form. *See Hicks v. Irvin*, No. 06-CV-645, 2011 WL 2213721, at *7 (N.D. Ill. June 7, 2011) (finding the plaintiff to be credible in part because he consistently told the same story).

## V. CONCLUSION

        For the foregoing reasons, Defendants failed to prove by a preponderance of the evidence that Plaintiff did not exhaust all available administrative remedies.

Date: January 07, 2020         By:   *Lisa A. [signature]*
                                                  Lisa A. Jensen
                                                  United States Magistrate Judge